# RANDOLPH CARFORD ET AL. *v.* EMPIRE FIRE AND MARINE INSURANCE COMPANY
## (AC 25355)

Bishop, DiPentima and Hennessy, Js.

Argued October 11, 2005—officially released February 28, 2006

*Michael F. Ewing,* for the appellants (plaintiffs).

*Daniel P. Scapellati,* with whom was *Aubrey E. Ruta,* for the appellee (defendant).

*Opinion*

DiPENTIMA, J. In this appeal, we address whether a third party claimant has a cause of action for unfair claim settlement practices against an insurer. The plaintiffs, Randolph Carford and Vidalina Carford, appeal from the judgment of the trial court rendered after the granting of the motion filed by the defendant, Empire Fire & Marine Insurance Company, to strike both counts of the plaintiffs' complaint. On appeal, the plaintiffs claim that the court improperly granted the motion to strike because an injured plaintiff need not be a party to an insurance contract or be subrogated to the rights of the insured in order to bring a claim (1) for breach of the duty of good faith and fair dealing or (2) under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq. We affirm the judgment of the trial court.

The following allegations from the complaint are relevant to the plaintiffs' appeal. On August 11, 2002, the plaintiffs were traveling in a motor home on Interstate 93 southbound in New Hampshire.[1] The driver of a northbound tractor trailer fell asleep, crossed the median and struck the motor home, causing serious injuries to the plaintiffs. Four months prior to the accident, the defendant had issued an insurance policy to the employer of the tractor trailer driver, providing the

___

[1] Randolph Carford was the owner and operator of the motor home, and Vidalina Carford was a passenger in the right front seat.

employer with liability insurance in the amount of $1 million per accident. The defendant was bound contractually to the driver and his employer under the terms of the insurance policy at the time of the collision.

The complaint further alleged that the value of the plaintiffs' case exceeded the $1 million policy limit,[2] and the plaintiffs' insurance company claimed $99,008.25 for subrogation. Because the defendant had paid $4909.43 to an unknown entity, the plaintiffs and their insurance company reached an agreement in which the remaining $995,090.57 would be divided in order to keep the claims within the defendant's policy limits.[3] The defendant was informed of that offer by telephone and facsimile in June, 2003, but failed to respond.

The plaintiffs filed their two count complaint on June 26, 2003, claiming in count one that the defendant had breached an implied covenant of good faith and fair dealing, contrary to its obligation to deal with the plaintiffs in a fair and reasonable manner, and in count two that the defendant had acted in violation of CUTPA and CUIPA by engaging in unfair acts or practices in the conduct of its business.[4] On August 11, 2003, the defendant responded by filing a motion to strike the plaintiffs' complaint in its entirety, asserting that there was no privity of contract between the parties to support the claims. On September 15, 2003, the court granted the motion to strike, stating that "the plaintiffs assert claims

[2] Vidalina Carford's medical expenses were approximately $17,000, while Randolph Carford's medical expenses exceeded $200,000. The plaintiffs claimed that, combined with their future medical expenses, intense pain and suffering, extreme mental and emotional injury, reduced ability to pursue and enjoy life's activities, lost time at work, reduced earning capacity and loss of consortium, the value of their case was considerably more than the sum of the medical expenses.

[3] The agreement provided that $49,500 would be paid to another insurer that was seeking subrogation, while the plaintiffs would receive the remaining $945,590.57.

[4] Specifically, the plaintiffs alleged four specific violations in count two of the complaint. See part II.

based upon an insurance contract to which they are not a party and where no subrogation exists."[5] The plaintiffs did not amend the pleadings and, after the court granted the defendant's motion to strike, the court rendered judgment in favor of the defendant on April 5, 2004. This appeal followed.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 537–38, 778 A.2d 93 (2001).

I

The plaintiffs first argue that an injured plaintiff need not be a party to an insurance contract or be subrogated to the rights of the insured in order to assert a claim for breach of the duty of good faith and fair dealing before the liability of the insured has been established. We disagree.

---

[5] The court's full statement provided: "The cases relied upon by the plaintiffs (*Bartlett* v. *Travelers Ins. Co.*, 117 Conn. 147, 155, 167 A. 180 [1933], and *Zimny* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 322369) [both] involve [an] action by a judgment creditor who is subrogated to the rights of the insured under General Statutes § 38a-321. Here, the plaintiffs [assert] claims based upon an insurance contract to which they are not a party and where no subrogation exists. Accordingly, based upon the authorities cited and submitted by the defendant, the motion to strike is granted."

"[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Citations omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004); see also 2 Restatement (Second), Contracts § 205 (1981) ("[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"). That requirement applies to insurance contracts: "An implied covenant of good faith and fair dealing has been applied by [our Supreme Court] in a variety of contractual relationships, including . . . insurance contracts . . . ." (Citations omitted; internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 170–71, 530 A.2d 596 (1987).

The plaintiffs do not claim that they are a party to the insurance contract; rather, they assert that a contractual relationship is not necessary for a claim of breach of the duty of good faith and fair dealing. Our established law does not support that claim. Connecticut courts repeatedly have held that "*the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.*" (Emphasis in original; internal quotation

marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 638, 804 A.2d 180 (2002), citing *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793, 749 A.2d 1144 (2000); see also *Forte* v. *Citicorp Mortgage, Inc.*, 90 Conn. App. 727, 733, 881 A.2d 386 (2005); *Miller* v. *Guimaraes*, 78 Conn. App. 760, 773, 829 A.2d 422 (2003).

As our case law makes clear, no claim of breach of the duty of good faith and fair dealing will lie for conduct that is outside of a contractual relationship. Notwithstanding that case law, the plaintiffs assert that because they offered to settle the case within the policy limits, the insurer's duty to the insured is transferred to the injured party. The plaintiffs offer no authority in support of that novel assertion. Rather, our authority recognizes a common-law duty of good faith and fair dealing between an insurer and its insured. See, e.g., *Buckman* v. *People Express, Inc.*, supra, 205 Conn. 170 (insurer owes common-law duty of good faith to insured independent from applicable statute). That duty, however, does not extend to a third party. *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 642 (in context of settling claims, insurer owes no fiduciary duty to third party claimant because "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured" [emphasis in original]). A third party claimant is subrogated to the rights of the insured, and is entitled to bring an action against an insurance company, only *after* judgment. See General Statutes § 38a-321.[6] Because there was no contractual

---

[6] General Statutes § 38a-321, entitled "Liability of insurer under liability policy," provides in relevant part: *"Upon the recovery of a final judgment* against any person, firm or corporation by any person . . . for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant

relationship between the parties, nor any judgment leading to subrogation, the defendant owed no duty of good faith and fair dealing to the plaintiffs. The plaintiffs' first argument therefore fails.

II

In their second argument, the plaintiffs assert that the court improperly granted the defendant's motion to strike the second count of the complaint because an injured party need not be a party to an insurance contract, or be subrogated to the rights of the insured, in order to assert CUTPA and CUIPA violations. We disagree.

It is well established that CUTPA affords a private cause of action. See *Fink* v. *Golenbock*, 238 Conn. 183, 212, 680 A.2d 1243 (1996) ("CUTPA provides a private cause of action to '[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . .' General Statutes § 42-110g [a]"). The Supreme Court applied that provision to CUIPA in *Mead* v. *Burns*, 199 Conn. 651, 509 A.2d 11 (1986), affirming "the existence of a private cause of action under CUTPA to enforce alleged CUIPA violations." Id., 663. Thus, if the plaintiffs properly allege CUIPA violations, they may have a cause of action under CUTPA.

The plaintiffs specifically contend that the defendant acted in violation of CUIPA in that it (1) "failed to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies"; (2) "failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; (3) "compelled the insured to institute litigation to

in such action could have enforced his claim against such insurer had such defendant paid such judgment." (Emphasis added.)

recover amounts due under an insurance policy by refusing to make any offer in settlement of the claim"; and (4) "failed to provide promptly a reasonable explanation for denial of the claim." Those allegations are based on subsections (b), (f), (g) and (n) of General Statutes § 38a-816 (6) of CUIPA, in which unfair claim settlement practices are defined.[7]

The critical question with respect to the second count, then, is whether under CUTPA, a third party

[7] General Statutes § 38a-816 (6) provides: "Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (b) failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies; (c) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; (h) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; (i) attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured; (j) making claims payments to insureds or beneficiaries not accompanied by statements setting forth the coverage under which the payments are being made; (k) making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration; (l) delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information; (m) failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; (n) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settle-

claimant may, prior to obtaining a judgment against the tortfeasor, assert a CUIPA violation against the insurer alleging unfair claim settlement practices.[8] Neither this court nor our Supreme Court has resolved the issue of whether CUTPA allows third party claimants to assert a CUIPA claim.

CUIPA is based on a legislative proposal in 1944 by the National Association of Insurance Commissioners (association), which Connecticut enacted in 1955. "The model act was amended in 1971 to include a section regulating unfair claim settlement practices, and this state enacted these new provisions in 1973."[9] *Mead* v. *Burns*, supra, 199 Conn. 659; see also Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1973 Sess., pp. 46, 97; 16 S. Proc., Pt. 3, 1973 Sess., p. 1214, remarks of Senator Edmund P. Power. The specific language of § 38a-816 (6) is not enlightening, and the legislative history of the statute is silent as to a third party's right to bring a claim against an insurance company.

Similar laws based on the association's proposal were enacted by a majority of the states, most of which have interpreted their law to preclude a private cause of action to *any* party and allowing only administrative enforcement. See, e.g., *A & E Supply Co.* v. *Nationwide*

ment; (o) using as a basis for cash settlement with a first party automobile insurance claimant an amount which is less than the amount which the insurer would pay if repairs were made unless such amount is agreed to by the insured or provided for by the insurance policy."

[8] We note that neither party included in their briefs any discussion as to whether the defendant's single act amounted to the commission or performance of an act enumerated in General Statutes § 38a-816 (6) "*with such frequency as to indicate a general business practice* any of the following . . . ." (Emphasis added.) General Statutes § 38a-816 (6); see *Mead* v. *Burns*, supra, 199 Conn. 656–61. We therefore do not consider that issue.

[9] Until it was transferred to General Statutes § 38a-816 (6) in 1991, the unfair settlement practice provision of CUIPA was included under General Statutes § 38-61 (6).

*Mutual Fire Ins. Co.*, 798 F.2d 669, 675 (4th Cir. 1986) ("[o]ur reading of Virginia law accords with the position of several state courts that the model unfair practices legislation proposed by the [association], as enacted in those states, does not create a private right of action"), cert. denied, 479 U.S. 1091, 107 S. Ct. 1302, 94 L. Ed. 2d 158 (1987); *Moradi-Shalal* v. *Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 304, 758 P.2d 58, 250 Cal. Rptr. 116 (1988) (en banc) ("[n]either [of the applicable sections of the California Insurance Code] was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in [the unfair claims settlement provision of the Code]"). Most of the states that have allowed a private cause of action have done so only for insureds or for third parties only after a judicial determination. See *State Farm Fire & Casualty Co.* v. *Zebrowski*, 706 So. 2d 275, 277 (Fla. 1997) (stating that the applicable Florida statute "authorizes a third party to file a bad-faith claim directly against the liability insurer . . . upon obtaining a judgment in excess of the policy limits"); *Hovet* v. *Allstate Ins. Co.*, 135 N.M. 397, 401, 404, 89 P.3d 69 (2004) (noting that New Mexico legislature "parted company with the majority [of other states] and created a private right of action for those injured by an insurer's unfair claims practices," but only after a "judicial determination of fault in favor of the third party and against the insured"); cf. *Royal Globe Ins. Co.* v. *Superior Court*, 23 Cal. 3d 880, 892, 592 P.2d 329, 153 Cal. Rptr. 842 (1979) (maintaining private cause of action to third parties, but only after "the conclusion of the action by the third party claimant against the insured"), overruled by *Moradi-Shalal* v. *Fireman's Fund Ins. Cos.*, supra, 304.[10] Only a distinct minority

---

[10] Nine years after its landmark decision in *Royal Globe Ins. Co.* v. *Superior Court*, supra, 23 Cal. 3d 880, the Supreme Court of California, reacting to an inundation of lawsuits brought in the lower courts, as well as criticism by commentators and the express rejection by other states' courts, overruled that decision in 1988. See *Moradi-Shalal* v. *Fireman's Fund Ins. Cos.*, supra, 46 Cal. 3d 304 ("[r]econsideration of that decision seems a far better alterna-

of states have allowed a third party claimant a private cause of action against the insurer. See, e.g., *State Farm Mutual Automobile Ins. Co.* v. *Reeder*, 763 S.W.2d 116, 118 (Ky. 1988) (explicitly stating that, notwithstanding decisions of other states, court relies on Kentucky's interpretation of unfair claims settlement practices act in holding that "private citizens are not specifically excluded by the statute from maintaining a private right of action against an insurer by third party claimants").[11]

In 1990, the association expressly considered for the first time whether the model act should allow a private cause of action and rejected the idea. 14 G. Couch, Insurance (3d Ed. Rev. 2005) § 204:51, p. 204-68. The unequivocal rejection was accompanied by a drafting note, stating that "[a] jurisdiction choosing to provide for a private cause of action should consider a different statutory scheme. This [claims settlement practices act] is inherently inconsistent with a private cause of action. This is merely a clarification of original intent and not indicative of any change in position." Id., p. 204-69.

There is also an overwhelming number of Connecticut Superior Court cases that disallow third party

tive than allowing ourselves to be swept deeper into the developing interpretive whirlpool it has created"). The court discussed at some length the act's legislative history and the adverse social and economic consequences of the decision. Id., 297–305. Although the court held that no longer would there be a private cause of action for any party under the applicable insurance statute, it defined "the conclusion of the action by the third party claimant against the insured"; (internal quotation marks omitted) id., 294; for cases that had been filed previously, pursuant to *Royal Globe Ins. Co.* "We will hold, for these pending cases, that settlement is an insufficient conclusion of the underlying action; there must be a conclusive judicial determination of the insured's liability before the third party can succeed in an action against the insurer under [California's version of the unfair insurance practices act]." Id., 306.

[11] In *State Farm Mutual Automobile Ins. Co.* v. *Reeder*, supra, 763 S.W. 2d 117, the jury had returned an $11,000 verdict, which had been satisfied prior to the appeal. In affirming that the statute entitled the third party plaintiff to a private cause of action, though, the Supreme Court of Kentucky did not discuss whether a prior judgment against the insured was required.

CUIPA claims through CUTPA when there is no subrogation or judicial determination in the third party's favor against the insured. See, e.g., *Asmus Electric, Inc.* v. *G.M.K. Contract*, Superior Court, judicial district of New Haven, Docket No. 489527 (February 25, 2005); *Estate of Ridgaway* v. *Cowles & Connell*, Superior Court, judicial district of Middlesex, Docket No. 103516 (May 21, 2004); *Izzo* v. *Kruk*, Superior Court, judicial district of New Haven, Docket No. 468089 (April 29, 2003) (34 Conn. L. Rptr. 441); *Shahnaz* v. *Patrons Mutual Ins. Co.*, Superior Court, judicial district of New London, Docket No. 563041 (September 16, 2004); *D'Alessandro* v. *Clare*, Superior Court, judicial district of Middlesex, Docket No. 84006 (April 1, 1999) (24 Conn. L. Rptr. 325); *Thompson* v. *Aetna Life & Casualty Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 308821 (May 15, 1987) (2 C.S.C.R. 648);[12] see also *Hipsky* v. *Allstate Ins. Co.*, 304 F. Sup. 2d 284, 292 & n.13 (D. Conn. 2004), citing *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 620, and Superior Court decisions in concluding that third party claimant has no private cause of action under CUTPA and CUIPA for alleged unfair settlement practices by insurer prior to judgment.

Because the plaintiffs here did not assert a separate cause of action solely under CUIPA, we do not decide

---

[12] We agree with the court in *Thompson* that "CUIPA does not clearly create rights in the third party claimant against the insurer. . . . [General Statutes] § 38a-816 (6) can properly be read to impose on the company claim settlement obligations in favor of the insured, or a claimant or beneficiary claiming under the policy. This interpretation is consistent with the nature of insurance policies to create contractual rights and duties between the insured and the insurer. That fundamental relationship would be distorted if the insurer also had a duty to third party claimants to settle claims. It is predictable that whenever the insurer declines to settle, the injured third party claimant will threaten the carrier with an independent lawsuit." *Thompson* v. *Aetna Life & Casualty Co.*, supra, 2 C.S.C.R. 650.

whether CUIPA allows a private cause of action. We do conclude that the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or a judicial determination of the insured's liability. To hold otherwise would create confusion, increased and multiple litigation both generally and within specific cases, the potential coercion of settlements when the insured's liability has not been and may never be established, and an inherent conflict of interest.[13] The judicial creation of such a right would not further the policy underlying CUIPA and CUTPA. Rather, it is the province of the legislature to create new rights and remedies contained within the highly regulated industry of insurance.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] As we noted previously, our Supreme Court has stated in the context of settling claims that an insurer owes no fiduciary duty to a third party claimant because "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured." (Emphasis in original.) *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 642.

