FROOM DEVELOPMENT CORPORATION ET AL. *v.*
DEVELOPERS REALTY, INC., ET AL.
(AC 29527)

Harper, Beach and Robinson, Js.

Argued January 5—officially released June 2, 2009

*Carl H. Hoffman*, with whom was *Frederic S. Ury*, for the appellants (plaintiffs).

*David S. Hoopes*, with whom, on the brief, were *Glenn E. Coe*, *Proloy K. Das* and *Peter J. Royer*, for the appellees (defendants).

*Opinion*

BEACH, J. This action arises from an unsuccessful effort to develop a shopping center in Concord, New Hampshire. The plaintiffs, Froom Development Corporation and the president of that corporation, Ronald J. Froom, appeal from the judgment of the trial court denying their motion to set aside the verdict, which was rendered on all but one count in favor of the defendants, a collection of individuals and corporate entities, including Developers Realty, Inc. (Developers Realty), and the Marion Eisenbaum Estate Trust (trust).[1] On appeal, the plaintiffs claim that the court (1) abused its discretion in denying their motion to set aside the ver-

---

[1] The defendants in this action include Developers Realty; Two Loudon Developers, LLC, whose members were Joseph R. Baranowski, Wayne Eisenbaum, Alan Eisenbaum and AMPM Developers; WAAM Developers, a limited liability company whose members were Wayne Eisenbaum, Alan Eisenbaum, Alan Helene and Marla Eisenbaum Helene; Kevin M. Dowd, an attorney for Developers Realty; Joseph Baranowski, president of Developers Realty; Alan Helene, individually and as general partner of AMPM Enterprises, LLC; Wayne Eisenbaum; Alan Eisenbaum; Marla Eisenbaum Helene; and the trust of which Wayne Eisenbaum, Alan Eisenbaum, Marla Eisenbaum Helene were trustees.

dict on the grounds (a) of inconsistency, (b) that it was inherently ambiguous for the jury to return a verdict in favor of the plaintiffs while awarding zero damages and (c) that the verdict was contrary to the law and unsupported by the evidence, and (2) abused its discretion by denying their oral motion for a mistrial made after the jury returned with a revised verdict. We affirm the judgment of the trial court.

The following facts, as stated by the court in its ruling on the plaintiffs' motion, and procedural history are relevant to our resolution of the plaintiffs' appeal. "The case involved a business dispute arising out of a written agreement between the plaintiffs . . . and the defendant Developers Realty . . . a corporation and one of several entities formed by the Eisenbaum family involved with the development of shopping malls. In essence, the agreement provided that if [Developers Realty] chose to develop real property brought to its attention by [the plaintiffs], then [the plaintiffs] would have a 50 percent ownership interest in the joint venture project. In all cases, [Developers Realty] would provide funds for all preconstruction development expenses and construction expenses, although it was the intent of the parties to obtain construction mortgages as soon as possible. The agreement also set out the understanding that if a parcel of property introduced by [the plaintiffs] was selected for possible development, and [Developers Realty] elected at a later date not to proceed with the development, [the plaintiffs] would be given a reasonable time to continue the project alone or to find a new partner to replace [Developers Realty]. . . .

"[The plaintiffs] directed [Developers Realty] to real property on Loudon Road near Concord, New Hampshire, which appeared developable into a shopping center, and [Developers Realty] took steps to obtain

options to purchase two parcels of the property. Some time in the 2000-2001 time frame, there was evidence that [Developers Realty] and individuals and entities associated with [Developers Realty] began to ignore [the plaintiffs] and any communications from [them] about the Concord project. . . . [In] July, 2003, [Developers Realty] directly told [the plaintiffs] that [it] no longer considered [the plaintiffs] to be a joint venture partner in the Concord project.

"The Concord project itself had a troubled life span. [The plaintiffs] initially envisioned a shopping center project of four retail outlets and a restaurant with a total amount of 140,000 to 150,000 square feet of space situated on eighteen to twenty acres of land. [Developers Realty] later increased the size of the proposed project and purchased or optioned more than ten additional acres. There was interest from various retail stores that continued for several years, but there was never sufficient interest to make the project a reality. Varying evidence was presented from all sides as to the root cause for the eventual failure of the project. [The plaintiffs] blamed the defendants' incompetence and inattention. The defendants saw the reasons as being the vagaries of the marketplace, competition from other developers and certain difficulties arising from the location of the property. For whatever reasons, however, the Concord project was not able to attract a satisfactory anchor tenant, and all parties agree that the lack of such a tenant kept other retailers from signing leases sufficient to get construction financing. The evidence showed that while Dick's Sporting Goods, an attractive potential anchor tenant, considered renting 50,000 square feet of retail space on the Concord project property, it eventually located elsewhere in the area because [Developers Realty] was unable to attract Bed Bath & Beyond as another tenant."

Thereafter, the plaintiffs brought a complaint in multiple counts against the defendants. By the end of trial, the number of counts had been narrowed to six: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., conversion and tortious interference with business relations.[2]

In the verdict, as accepted, the jury found in favor of the plaintiffs only on the count alleging breach of the covenant of good faith and fair dealing and awarded no damages on that count. The plaintiffs thereafter filed a motion to set aside the verdict, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendants' threshold jurisdictional claim that the plaintiffs have not appealed from a final judgment. See, e.g., *Levarge* v. *General Dynamics Corp.*, 282 Conn. 386, 390, 920 A.2d 996 (2007). The defendants argue that we do not have subject matter jurisdiction over this appeal because the plaintiffs appealed from the court's memorandum of decision

---

[2] In opening argument, the defendants conceded that Development Realty had breached the written agreement but contended, however, that the breach did not cause the plaintiffs any injury. The breach of contract count was against Developers Realty and the trust; the breach of the implied covenant of good faith and fair dealing count was against Developers Realty and the trust; the breach of fiduciary duty count was against Joseph R. Baranowski, Kevin M. Dowd, Developers Realty and the trust; the count alleging violation of CUTPA was against Baranowski, Two Loudon Developers, LLC, WAAM Developers, Developers Realty and the trust; the conversion count was against Baranowski, Dowd, Wayne Eisenbaum, Two Loudon Developers, LLC, WAAM Developers, Developers Realty and the trust; and the tortious interference with business relations count was against Developers Realty, Baranowski, Dowd, the trust, Wayne Eisenbaum, Two Loudon Developers, LLC, and WAAM Developers.

denying their motion to set aside the verdict, rather than from the judgment the court rendered. They argue that as a result, the plaintiffs have not appealed from a final judgment. We disagree.

"[T]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments . . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005).

The record shows that the verdict was reached on October 26, 2007. A motion to set aside the verdict was filed on November 5, 2007. The court denied that motion and rendered judgment on December 21, 2007. The appeal was filed on January 9, 2008. The appeal form states that the appeal was taken from the denial of the motion to set aside the verdict and does not specifically state that it was taken from the judgment rendered at the same time. If this is a defect, however, it amounts to no more than one of form that requires challenge, if at all, within ten days after the filing of the appeal. See *Letsch* v. *Slady*, 145 Conn. 401, 402, 143 A.2d 642 (1958); Practice Book § 66-8;[3] see also General Statutes § 52-

[3] Practice Book § 66-8 provides: "Any claim that an appeal or writ of error should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal or writ. Any such motion must be filed in accordance with Sections 66-2 and 66-3 *within ten days after the filing of the appeal* . . . ." (Emphasis added.)

263.[4] Because the defendants have failed to move to dismiss the appeal, they have waived any such defect. See *Maciejewska* v. *Lombard Bros., Inc.*, 171 Conn. 35, 37 n.1, 368 A.2d 206 (1976); *Desmarais* v. *Pinto*, 147 Conn. 109, 110, 157 A.2d 596 (1960). Accordingly, we now turn to the merits of the plaintiffs' appeal.

## II

The plaintiffs claim that the court abused its discretion in denying their motion to set aside the verdict. The plaintiffs argue that the court should have granted the motion on the grounds (1) of inconsistency, (2) that it was inherently ambiguous for the jury to return a verdict in favor of the plaintiffs while awarding zero damages and (3) that the verdict was contrary to the law and unsupported by the evidence. We disagree.

We begin by setting forth our standard of review. "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside

---

[4] General Statutes § 52-263 provides in relevant part that "[u]pon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, *including the denial of a motion to set aside a verdict,* he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict . . . ." (Emphasis added.)

a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 32–33, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

## A

The plaintiffs claim that the court abused its discretion when it denied their motion to set aside the verdict on ground of inconsistency.[5] We disagree.

"The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers

---

[5] Among their claims of inconsistency, the plaintiffs assert that because the evidence showed that Joseph R. Baranowski was the agent of the trust and WAAM Developers, it was inconsistent for the jury to find that (1) Baranowski and Developers Realty failed to prove that they did not breach their fiduciary duty to the plaintiffs while at the same time finding that the trust had proved that it did not breach its fiduciary duty to the plaintiffs and (2) Baranowski and Developers Realty violated CUTPA while also finding that the trust and WAAM Developers had not violated CUTPA.

Not only does it appear from the motion to set aside the verdict and from the transcripts provided to us that this claim was not raised before the trial court, the court did not address these issues. Accordingly, we will not review it. "[B]ecause [appellate] review is limited to matters in the record, we will not address issues not decided by the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998).

made to them, without resort to the evidence offered at the trial. . . . It is not the function of a court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Citations omitted; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 269–70, 698 A.2d 838 (1997).

1

The plaintiffs argue that the jury interrogatory answers regarding causation of injury were inconsistent. They argue that it was inconsistent for the jury to find on the count alleging breach of the implied covenant of good faith and fair dealing that the breach *caused* legal injury while finding on the breach of contract count that the breach did *not cause* legal injury. The plaintiffs' argument is hinged on their contention that the jury "misperceived" the court's instructions that "[t]he covenant of good faith does not create new contract terms and may not be employed to achieve a result contrary to the terms in an express contract." We disagree.

The jury's answers to the interrogatories regarding causation of injury on the count alleging breach of the implied covenant of good faith and fair dealing and on the count alleging breach of contract were not inconsistent. Two separate breaches were involved. In their complaint, the plaintiffs pleaded breach of contract and breach of the implied covenant of good faith and fair dealing as separate causes of action. Although both counts had some allegations in common, the two counts were not identical. The breach of contract count focused on the ways in which Developers Realty

engaged in conduct that injured the plaintiffs' right to receive benefits under the contract. The count alleging breach of the implied covenant of good faith and fair dealing additionally alleged that Developers Realty, while engaging in conduct that injured the plaintiffs' right to receive benefits under the contract, was acting in bad faith and with dishonest purpose.[6]

In its instructions to the jury, the court explained that "every contract contains within it an implied covenant of good faith and fair dealing, which requires that the parties to the contract do nothing which will injure the right of the other party to receive the benefits of the contract. . . . Under this rule, [Developers Realty] had an obligation to exercise good faith to see that the plaintiffs received their 50 percent interest in the Concord . . . project and the other rights pursuant to the memorandum of understanding. . . . Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . Good faith and fair dealing means an attitude or state of mind denoting honesty of purpose and freedom from intention to defraud. It means being faithful to one's duty and obligation under the contract. . . . Good faith is defined as the opposite of bad faith. If the defendant engaged in bad faith, you must find that it did not fulfill the covenant. Bad faith generally implies a design to mislead or deceive another or . . . a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. Bad faith is not simply bad judgment or negligence, but rather, it implies the conscious doing of a wrong because of dishonest purpose. Bad faith contemplates a state of mind affirmatively operating

---

[6] In both of these counts, the plaintiffs alleged that the trust was also liable in that Developers Realty was a shell corporation that was controlled by the trust.

with furtive design or ill will." See *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 271 (jury interrogatories to be read in conjunction with jury instructions); see also *Carford* v. *Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 45, 891 A.2d 55 (2006) ("[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiffs' right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith" [internal quotation marks omitted]).

With respect to both counts, the plaintiffs claimed that as a result of the breach, they lost their rights to the Concord project, their business opportunity for development of the project and the value of their services. The complaint also alleged, with respect to both counts, damage to their business credibility. In their opening argument, the defendants conceded that there was a breach of contract. They stated, inter alia, that there was a period in time in which Developers Realty did not treat the plaintiffs as a partner. The jury could have found that no injury flowed from the breach of contract, which the defendants had conceded, because there was never any income stream from the Concord project. The jury, however, could have found that the defendants acted in bad faith in breaching the contract, and, as a result, the plaintiffs suffered injury to their credibility. In short, the plaintiffs pleaded two separate causes of action, and it is not necessarily inconsistent for the jury to find that the breach of the express terms did not cause any injury while finding that the breach of the implied covenant of good faith and fair dealing did cause legal injury.

2

The plaintiffs next claim that the jury's verdict was inconsistent with the jury interrogatories and, accordingly, that the court should have granted their motion

to set aside the verdict. The plaintiffs contend that after deliberating for a second time, "the jury returned with the interrogatories unchanged, but with a second verdict which the trial judge had essentially dictated." The plaintiffs argue that the second verdict "continued with the inconsistencies relating to breach of contract and breach of the covenant of good faith and fair dealing."[7] We disagree.

The following additional facts are relevant to our resolution of this issue. The jury initially returned a verdict in favor of the plaintiffs on the counts alleging breach of the implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty and violation of CUTPA. In its answers to interrogatories, the jury found that the alleged breach of fiduciary duty and alleged conversion had not caused legal injury and that the alleged CUTPA violation had not caused ascertainable loss. The court did not accept this verdict because the court deemed it to be inconsistent with the answers to the jury interrogatories. The court explained: "[You stated that] the breach of the fiduciary duty did not . . . cause injury. You've also stated that the conversion did not cause injury, and you've stated as to CUTPA that the violation did not cause ascertainable harm. Causation is an essential part of liability. So, I am going to ask you to reconsider your plaintiffs' verdict form saying that you find in favor of the plaintiffs in connection with the conversion, breach of fiduciary duty and [CUTPA]." The court further explained that the jury could resolve this inconsistency by either changing the finding on the verdict form or changing the interrogatory answers. The jury then changed its verdict on the three counts

---

[7] To the extent that the plaintiffs also argue that it was inconsistent for the jury to find in their favor on the count alleging breach of the implied covenant of good faith and fair dealing and in favor of the defendants on the breach of contract count, we do not agree for the reasons stated in part II A 1.

in question from a plaintiffs' verdict to a defendants' verdict and, therefore, found that the plaintiffs prevailed only on the count alleging breach of the implied covenant of good faith and fair dealing. The court accepted this revised verdict.

Contrary to the plaintiffs' assertions, the court did not impermissibly limit the jury as to how it could resolve the inconsistencies. The court explained that it was inconsistent for the jury to find in its answers to interrogatories that the alleged breach of fiduciary duty and alleged conversion had not caused legal injury and that the alleged CUTPA violation had not caused ascertainable loss, while at the same time returning a verdict for the plaintiffs on those counts. The court instructed the jury that causation of injury is an element of each cause of action and indicated that to be consistent, the jury should change *either* its interrogatory answers *or* its verdict. The jury resolved the inconsistency by changing its verdict on the breach of fiduciary duty, conversion and CUTPA counts from a plaintiffs' to a defendants' verdict.

B

The plaintiffs next claim that the court should have set aside the verdict on the ground that it was inherently ambiguous for the jury to return a verdict in favor of the plaintiffs on the count alleging breach of the implied covenant of good faith and fair dealing and also to award zero damages.[8] We disagree.

---

[8] The plaintiffs also claim that it was inherently ambiguous for the jury to have found that a breach of fiduciary duty and a conversion occurred and also to have awarded no damages on those counts. Although the jury initially returned a plaintiffs' verdict on these counts and awarded zero damages on them, the court did not accept this verdict. The jury, thereafter, changed its verdict on, inter alia, the counts alleging a breach of fiduciary duty and conversion from a plaintiffs' verdict to a defendants' verdict. The court accepted this verdict form. It was not ambiguous for the jury to determine that the plaintiffs did not prevail on the counts alleging breach of fiduciary duty and conversion and not to award damages with respect to those counts.

"[T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . A verdict is not defective as a matter of law as long as it contains an intelligible finding so that its meaning is clear. . . . A verdict will be deemed intelligible if it clearly manifests the intent of the jury." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Bergman*, 106 Conn. App. 660, 680, 943 A.2d 515, cert. granted on other grounds, 287 Conn. 911, 950 A.2d 1287 (2008). "[T]he amount of a damage award is a matter peculiarly within the province of the trier of fact . . . and [i]f, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Citation omitted; internal quotation marks omitted.) *Wickers* v. *Hatch*, 252 Conn. 174, 183, 745 A.2d 789 (2000). "In reviewing the action of the trial court in denying the motions . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995).

In support of their argument, the plaintiffs cite *Malmberg* v. *Lopez*, 208 Conn. 675, 681, 546 A.2d 264 (1988), in which our Supreme Court held that a verdict finding the issues in favor of the party seeking to recover damages but awarding zero damages was inherently ambiguous. The plaintiffs also rely on *Fox* v. *Colony T.V. & Appliance, Inc.*, 37 Conn. App. 453, 656 A.2d 705, cert. denied, 233 Conn. 915, 659 A.2d 185 (1995), in which we stated that "[a] plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. . . . The jury's intent in rendering a plaintiff's verdict with zero damages . . . is far less clear. . . . In this situation, it cannot be stated with certainty either that the jury found that the plaintiff had failed to prove any damages or that the jury was confused as to the correct interplay between damages and liability. . . . [T]he jury's intent in finding the issues for the plaintiff, but awarding zero damages, is known only to the jurors, and this court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation. . . . The appropriate course of action when such an ambiguous verdict is rendered is to order a new trial on all issues." (Citations omitted; internal quotation marks omitted) Id., 455–56, citing *Malmberg* v. *Lopez*, supra, 681–83.

In the present case, the award of zero damages was not inherently ambiguous. The intent of the jury was not unclear. The jury's answers to the interrogatories indicated that it found that the plaintiffs proved that Developers Realty had breached the covenant of good faith and fair dealing and that the breach had caused injury to the plaintiffs. The jury answered, "no," in response to the question, "[d]id the plaintiffs prove the existence and the amount of damages with reasonable certainty?"

The present case is similar to *Hughes* v. *Lamay*, 89 Conn. App. 378, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). In that case, we distinguished *Malmberg*[9] and *Fox* by stating that unlike the alleged injuries in those two cases, in *Hughes*, the plaintiff's alleged injuries were speculative in nature. Id., 386. In *Hughes*, the jury returned a plaintiff's verdict but awarded no damages. Id., 380–81. This court held that, in context, the award of zero damages fell " 'within the necessarily uncertain limits of fair and reasonable compensation' " and, therefore, was not ambiguous because the plaintiff's alleged injuries were speculative in nature. Id., 386. In the present case, the plaintiff had to prove lost profits with reasonable certainty to recover damages. See *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 69, 717 A.2d 724 (1998). In its instructions to the jury, the court explained: "The plaintiffs here claim that the breach [of the implied covenant of good faith and fair dealing] caused them to lose the opportunity to earn profits from their promised 50 percent of the equity interest in the Concord project. It is permissible to award damages based on claimed lost profits and, in estimating these, it is allowable to consider financial projections made by a defendant or defendants. There may be other ways to calculate profits in other cases, but many of them are not available in this case because the Concord project did not come to fruition and was not a success. . . . [Y]ou must find that the evidence provides a basis for estimating the amount of lost profits with reasonable certainty."

[9] *Malmberg* is a wrongful death case in which the jury had returned a plaintiffs' verdict but awarded no damages. *Malmberg* v. *Lopez*, supra, 208 Conn. 676. The certified issue decided by the Supreme Court in that case was whether the Appellate Court improperly remanded the case for further proceedings only on the issue of damages while allowing the jury's determination of liability in favor of the plaintiff to remain undisturbed. Id., 679.

The breach of contract that the defendants conceded in opening argument occurred before the project got off the ground. The plaintiffs claimed damages for lost profits reasonably to be anticipated at the time of the breach. The plaintiffs' expert, David Dumeer, relied on pro forma projections outlining the sales potential for the Concord project. Alan Schachter, the defendants' expert witness, testified that the calculations used by Dumeer were inappropriate for ascertaining the value of a lost business opportunity. There was evidence provided throughout the opinion of the defendants' expert that the value of the lost opportunity claimed by the plaintiffs was zero. The jury was free to credit the defendants' expert and not to credit the plaintiffs' expert. See *Mierzejewski* v. *Brownell*, 102 Conn. App. 413, 422, 925 A.2d 1126 (trier free to accept or reject, in whole or part, testimony offered by either party), cert. denied, 284 Conn. 917, 931 A.2d 936 (2007). The award of zero damages, therefore, was not inherently ambiguous.[10]

## C

The plaintiffs next claim that the court abused its discretion in denying their motion to set aside the verdict as contrary to the law and unsupported by the evidence. We disagree.

## 1

The plaintiffs argue that the court abused its discretion in finding that there was sufficient evidence to support the jury's findings that the breach of contract, breach of fiduciary duty and conversion did not cause legal injury. We disagree.

---

[10] The return of a plaintiffs' verdict established a technical legal injury that entitled the plaintiffs to at least nominal damages. *Hughes* v. *Lamay*, supra, 89 Conn. App. 386 n.7. "[T]his court as a general rule [however] will not reverse and grant a new trial for a mere failure to award nominal damages." (Internal quotation marks omitted.) Id.

The plaintiffs essentially argue that it was clear from the evidence presented at trial that the defendants' conduct caused them to lose their 50 percent interest in the Concord project.[11] The plaintiffs' argument assumes that the defendants' actions necessarily deprived them of something of value. From Froom's testimony and the parties' agreement, the jury reasonably could have determined that Froom had no management rights in the partnership. The jury also reasonably could have found that the written agreement did not allow Froom to receive any benefit from the project unless and until it was built and generating income. The testimony of Froom and Kevin M. Dowd, general counsel and senior vice president of Developers Realty, indicates that the Concord shopping center was never built and that it never generated income. The jury reasonably could have concluded that Froom was not entitled to receive benefits from the project and thus suffered no injury.

2

The plaintiffs next argue that the court abused its discretion in finding that there was sufficient evidence to support the jury's finding that the defendants' CUTPA violations caused the plaintiffs no ascertainable harm. We disagree.

"To prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or

---

[11] The plaintiffs offer several arguments that the jury's findings were contrary to law and not supported by the evidence. The plaintiffs argue that "[a]s a result of the defendants' conduct, Froom was (1) disenfranchised from his benefits and rights under the joint venture agreement, including the business opportunity provided by it; (2) disenfranchised from his benefits and rights under the landowner option agreements; (3) disenfranchised of his accumulated work as partner; and (4) denied his partnership right to participate in the management of the project, as provided by General Statutes § 34-335 (f) . . . . At a minimum, the defendants took from Froom his 50 percent ownership interest in the Concord project, as valued at the time of the defendants' taking."

commerce; General Statutes § 42-110b (a); and (2) each class member claiming entitlement to relief under CUTPA has suffered an *ascertainable loss* of money or property as a result of the defendant's acts or practices. General Statutes § 42-110g (a)." (Emphasis added; internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 217, 947 A.2d 320 (2008).

The plaintiffs make arguments with respect to the CUTPA claim similar to those made concerning the breach of contract, breach of fiduciary duty and conversion counts. Here, again, we conclude that the jury reasonably could have concluded that Froom was not entitled to receive benefits from the project until it was built and generating income and that because the project was never built, he did not suffer any losses.

3

The plaintiffs next argue that the court abused its discretion in finding that there was sufficient evidence to support the jury's findings that the defendant trust proved by clear and convincing evidence[12] that it did not breach the fiduciary duty owed to the plaintiffs.[13] We have concluded in part II C 1 that the court did

---

[12] "Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. Once a fiduciary relationship is found to exist, the burden of proving fair dealing shifts to the fiduciary. Furthermore, the standard of proof for establishing fair dealing is not the ordinary fair preponderance of the evidence standard. The fiduciary is required to prove fair dealing by clear and convincing evidence." *Stuart* v. *Stuart*, 112 Conn. App. 160, 171 n.5, 962 A.2d 842, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 237 (2009).

[13] The plaintiffs also claim that because the jury found that Joseph R. Baranowski did not prove by clear and convincing evidence that he did not breach the fiduciary duty owed to the plaintiffs, the court abused its discretion in not finding that the jury was not required to find the trust liable on the theory that Baranowski acted as an agent of the trust with respect to the Concord project. This claim was not raised before the trial court. Accordingly, we decline to consider it on appeal. See *Solano* v. *Calegari*, 108 Conn. App. 731, 742, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008).

not abuse its discretion in determining that there was sufficient evidence to support the jury's finding that any breach of fiduciary duty did not cause any injury. Regardless of whether there was sufficient evidence to support the jury's finding that the trust did not breach the fiduciary duty owed to the plaintiffs, the outcome would remain the same in that the defendants would still prevail on the count alleging a breach of fiduciary duty. Even if we were to assume there was a breach, a defendants' verdict on this count is supported by the evidence because there was sufficient evidence to support the jury's finding that any breach did not cause any injury.

For the foregoing reasons, we conclude that it was not an abuse of discretion for the court to deny the plaintiffs' motion to set aside the verdict. We also note that when we view the totality of the plaintiffs' claims with respect to the motion to set aside the verdict together with the record as a whole, we discern that the jury reasonably and fundamentally could have determined that the plaintiffs suffered no quantifiable harm, despite the breach, and thus reasonably could have reached the verdict that it did.

## III

The plaintiffs claim that the court abused its discretion by denying their oral motion for a mistrial made after the jury returned with the revised verdict. We decline to review this claim.

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision

whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 316–17, 852 A.2d 703 (2004).

After the jury returned its revised verdict, the plaintiffs made an oral motion for a mistrial. The court responded, "denied," and did not elaborate. The plaintiffs did not move for an articulation to ascertain the basis for the court's decision. Accordingly, we cannot review this claim. The plaintiffs subsequently filed a "motion to set aside the verdict, for a new trial and/or a renewed motion for mistrial" in which, inter alia, they renewed their motion for a mistrial on the basis of the jury's "hopeless confusion." In its memorandum of decision, the court did not specifically address the plaintiffs' motion for a mistrial. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . ." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003); see also Practice Book §§ 60-5 and 66-5. In view of the inadequate record, we cannot ascertain why the court denied the motion for a mistrial, and, therefore, we decline to review this claim.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[14] In their "motion to set aside the verdict, for a new trial and/or a renewed motion for mistrial" the plaintiffs renewed their motion for a mistrial on the basis of the jury's "hopeless confusion." To the extent that the plaintiffs claim that this is improper, we decline to review this claim. In its memorandum of decision, the court did not specifically address the plaintiffs' motion for a mistrial. "It is . . . the responsibility of the appellant . . . to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 232.

We note that the context of the renewed motion for a mistrial suggests that the motion raised the same general subject matter that was developed at greater length in the motion to set aside the verdict.