******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBIN MICALIZZI *v.* KENNETH STEWART
## (AC 38683)

DiPentima, C. J., and Sheldon and Norcott, Js.

*Syllabus*

The plaintiff sought to recover damages for personal injuries she sustained in an automobile accident allegedly caused by the defendant's negligence. The jury returned a verdict in favor of the plaintiff, awarding her economic damages but no noneconomic damages. Thereafter, the trial court denied the plaintiff's motion for additur or to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Held:*

1. The trial court did not abuse its discretion in denying the plaintiff's motion for additur or to set aside the verdict:

a. The plaintiff's claim that the court should have set aside the verdict because the award of zero noneconomic damages conflicted with the jury's answers to certain interrogatories she had requested and was thus, fatally inconsistent, was unavailing: when a certain interrogatory was read in conjunction with the court's instructions to the jury to consider each claim for damages separately and to decide damages last, it was clear that the interrogatory concerned the nature of the defendant's liability, not the existence or extent of the plaintiff's damages, the court made it clear that the mere fact that the plaintiff suffered an injury or loss did not automatically entitle her to damages, the plaintiff's interpretation of the interrogatory would have required the jury to proceed contrary to the court's instructions and to consider the questions of causation and damages simultaneously, and it was entirely plausible and reasonable for the jury to have found that the defendant violated certain statutes pleaded in the complaint with reckless disregard and that the plaintiffs injuries were caused thereby, but that the plaintiff did not prove her noneconomic damages by a fair preponderance of the evidence; accordingly, the plaintiff failed to show that the jury's verdict was inconsistent with its answers to the interrogatories.

b. The plaintiff could not prevail on her claim that the award of zero noneconomic damages was inadequate as a matter of law: an award of all claimed economic damages, including compensation for medical expenses for the treatment of pain, does not require an award of noneconomic damages, and, thus, the fact that the jury awarded economic damages for medical treatment, including treatment for pain, did not necessarily mean that it had to award damages for pain itself, as it may be reasonable for a jury to conclude that although a plaintiff suffered an injury caused by a defendant and incurred reasonable and necessary medical expenses in treating that injury, the plaintiff nevertheless did not suffer compensable pain and suffering; moreover, the jury here reasonably could have determined that all of the plaintiff's medical expenses were reasonable and necessary treatment for her relatively minor injuries but that the plaintiff did not experience any compensable pain related to the accident, that the plaintiff failed to prove by a preponderance of the evidence that the accident caused her headaches and neck pain, and therefore, that although her diagnostic consultation and radiological imaging were reasonable and necessary in light of the collision, she did not experience compensable pain caused by it, and the jury was free to credit all, none or some of the testimony of the plaintiff, who failed to show that there was either a mistake in law or another valid basis for upsetting the will of the jury.

2. The trial court did not abuse its discretion in refusing to set aside the verdict due to certain alleged procedural irregularities: although the plaintiff claimed that the court improperly failed to accept a technically correct verdict and to consult with counsel before reinstructing the jury, there was nothing in the record, or in any legal authority provided by the plaintiff, to indicate that she was harmed or prejudiced by the court's action in adjourning for the day after the jury had indicated that it was pretty sure that it had done everything necessary to render a technically correct verdict, to give the jury more time the following day, after it

was reinstructed, to properly complete the verdict forms, and the record showed that the court explained to counsel what it planned to do, listened to counsel and then reinstructed the jury as to filling out the verdict forms, and there was no merit to the plaintiff's claim that the court failed to ensure that only full exhibits were submitted to the jury; moreover, although the plaintiff claimed that the court improperly discharged the jury before the parties had an opportunity to request a polling of the jury under the applicable rule of practice (§ 16-32), that rule does not require the court to inquire, sua sponte, whether the parties want to have the jury polled, and there was no request prior to the discharge of the jury for it to be polled.

Argued October 16, 2017—officially released May 8, 2018

*Procedural History*

Action to recover damages for personal injuries sustained by the plaintiff in a motor vehicle accident allegedly caused by the defendant's negligence, and for other relief, brought to the Superior Court in the judicial district of Bridgeport and tried to a jury before *Radcliffe, J.*; verdict for the plaintiff; thereafter, the court denied the plaintiff's motion for additur or to set aside the verdict, and the plaintiff appealed to this court. *Affirmed.*

*Tracey Lane Russso*, with whom, on the brief, was *Gerard McEnery*, for the appellant (plaintiff).

*Michael T. Vitali*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. In this personal injury action arising from an automobile collision, the jury found in favor of the plaintiff, Robin Micalizzi, and awarded her all of her claimed economic damages but zero noneconomic damages. She filed a motion to set aside the verdict and, in the alternative, for an additur on the ground that she also was entitled to noneconomic damages. The trial court denied that motion, and the plaintiff appealed from that denial. She claims that the court abused its discretion by (1) refusing to set aside the verdict or to order an additur because the jury's verdict was inconsistent and inadequate, and (2) refusing to set aside the verdict because of procedural irregularities. We do not agree. Accordingly, we affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. On May 10, 2013, at the intersection of North Bishop and Grandfield Avenues in Bridgeport, a vehicle operated by the defendant, Kenneth Stewart, struck the vehicle the plaintiff was operating. The plaintiff claimed that the collision caused a strain/sprain of her cervical spine, permanent damage to her left hand and recurring, severe headaches. She consulted medical professionals and received some treatment for her alleged injuries, incurring a total of $7,325 in medical expenses.

On September 11, 2013, the plaintiff brought an action against the defendant, alleging that his negligence, statutory recklessness, and common-law recklessness had caused her aforementioned injuries.[1] On November 3 and 4, 2015, the matter was tried to a jury. On November 6, 2015, the jury returned a plaintiff's verdict, finding the defendant 65 percent responsible for the plaintiff's injuries and awarding the plaintiff that proportion of her total claimed economic damages. The jury did not award the plaintiff any noneconomic damages. The plaintiff filed a motion to set aside the verdict and, in the alternative, for an additur. After a hearing, the court orally denied the plaintiff's motion, and the plaintiff appealed from that denial.[2] Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court abused its discretion by refusing to set aside the verdict or to order an additur. Specifically, the plaintiff argues that (1) the court should have set aside the verdict because the award of zero noneconomic damages conflicts with the jury's answers to the interrogatories and (2) the court should have set aside the verdict or ordered an additur because the award was inadequate as a matter of law. We disagree.

We begin with the standard that governs our review. "The trial court's refusal to set aside the verdict or to

order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption. . . .

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits. Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will." (Internal quotation marks omitted.) *DeEsso* v. *Litzie*, 172 Conn. App. 787, 795–96, 163 A.3d 55, cert. denied, 326 Conn. 913, 173 A.3d 389 (2017).

A

We first address the plaintiff's contention that the court should have set aside the verdict because the award of zero noneconomic damages conflicted with the jury's answers to the interrogatories she requested and, thus, was fatally inconsistent. We conclude that the verdict and the responses to the interrogatories were not necessarily inconsistent.

A party may request that the court submit interrogatories to the jury pursuant to Practice Book § 16-18.[3] Interrogatories provide a breakdown of the components of the jury's award and of the factors underlying the jury's ultimate view of the evidence. *DeEsso* v. *Litzie*, supra, 172 Conn. App. 797; *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 462, 709 A.2d 1154 (1998); *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997). In considering

the plaintiff's claim, we note that "[i]t is not the function of a court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 698 A.2d 838 (1997); *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 626–27, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009).

Only if a court cannot harmonize the verdict and the interrogatories may it refuse to accept such verdict. *Rendahl* v. *Peluso*, 173 Conn. App. 66, 95–96, 162 A.3d 1 (2017). "A verdict is not defective as a matter of law as long as it contains an intelligible finding so that its meaning is clear. . . . A verdict will be deemed intelligible if it clearly manifests the intent of the jury." *Sigular* v. *Gilson*, 141 Conn. App. 581, 587, 62 A.3d 564, cert. granted, 308 Conn. 948, 67 A.3d 291 (2013) (appeal withdrawn Aug. 1, 2013).

"The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to . . . interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must [negate] every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Citation omitted; internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 269–70; *Snell* v. *Norwalk Yellow Cab, Inc.*, 172 Conn. App. 38, 72, 158 A.3d 787, cert. granted, 325 Conn. 927, 169 A.3d 232 (2017); *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 626–27.

In this case, in its answers to the interrogatories, the jury specifically found that (1) the defendant violated both General Statutes §§ 14-218a[4] and 14-222,[5] (2) the defendant violated both statutes "with reckless disregard"[6] and (3) the defendant's violation of such statutes with reckless disregard proximately caused the plaintiff's injuries, but that (4) the plaintiff was not entitled to double or treble damages. In addition, the jury found that the plaintiff was comparatively negligent. Ultimately, the jury determined that the plaintiff was entitled to recover 65 percent of $7,325, the latter sum

representing her claimed and proven economic damages, but no noneconomic damages. Thus, the jury's total award was $4,761.25.

It is the plaintiff's contention that, notwithstanding its award of noneconomic damages, the jury found that she had necessarily endured pain and suffering, therefore entitling her to noneconomic damages. Specifically, the plaintiff directs our attention to the third interrogatory, which reads: "Do you find that the violation of either or both statutes 'with reckless disregard,' was the proximate cause (substantial factor) of the injuries sustained by [the plaintiff]?"[7] The jury answered this interrogatory in the affirmative. The plaintiff contends that the phrase "injuries sustained by [the plaintiff]" implies a subordinate finding that there were, in fact, noneconomic damages.[8] Specifically, the plaintiff asserts that were we to "[break] down the plain meaning of the terms used by the [j]ury in [its] findings," we would have to conclude "that medical care would not be rendered for injuries if there was no 'physical pain and suffering [or] permanent injury disability or impairment.' "

This argument is unavailing. Even if we assume that the interrogatory and its answer were open to interpretation, our standard of review requires us to resolve any ambiguity in the verdict in favor of the verdict's propriety. See *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 435 n.14, 820 A.2d 258 (2003) (harmonizing verdict where compound question in jury interrogatory resulted in ambiguous answer); *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 270 ("the court has a duty to attempt to harmonize the answers" [internal quotation marks omitted]).

When read in conjunction with the court's instructions to the jury; see *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 271 ("we do not read the interrogatories in isolation, but, rather, in conjunction with the jury instructions"); it is clear that the third question concerned the nature of the defendant's liability, not the existence or extent of the plaintiff's damages. The court instructed the jury that it ought to decide damages last, that it should consider each claim for damages separately from all others, that it was free to credit or discredit any witness' testimony, and that the plaintiff had the burden of proving her damages by a fair preponderance of the evidence.[9]

Indeed, the court made it clear that "the mere fact that the plaintiff suffered an injury or loss *does not automatically entitle her to damages*. She must prove by the preponderance of the evidence standard that her injuries and damages were proximately caused by some act or acts of negligence on the part of the defendant. In other words, the plaintiff must prove three elements to you. First, at least one act of negligence on the part of the defendant as specified or outlined in her complaint.

*Second, that that act or those acts proximately caused her injuries. And third, she must prove the resulting injuries and damages.*" (Emphasis added.) These instructions clarify that each component of the jury's verdict requires a separate consideration, and that the jury would necessarily have had to address the question of proximate causation before it turned to the question of damages. The plaintiff's interpretation of the challenged interrogatory would require the jury to proceed contrary to the court's instructions and consider the questions of causation and damages simultaneously. "[I]t is well established that, [i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." *Monti* v. *Wenkert*, 287 Conn. 101, 116, 947 A.2d 261 (2008).

Accordingly, it is entirely plausible and reasonable for the jury here to have found that the defendant violated the two pleaded statutes with reckless disregard and that the plaintiff's injuries were caused by the same, but that the plaintiff did not prove her noneconomic damages by a fair preponderance of the evidence. See also part I B of this opinion. As a result, the plaintiff cannot demonstrate that the jury's verdict is inconsistent with its answers to the interrogatories. The court, therefore, did not abuse its discretion in refusing to set aside the verdict on that ground.

B

Having determined that the jury's verdict is not inconsistent with its answers to the interrogatories, we turn now to the plaintiff's contention that the award is inadequate and, thus, that the court abused its discretion in refusing to set it aside or to order an additur. This contention has two parts. First, the plaintiff argues that an award of zero noneconomic damages is inadequate as a matter of law where the jury has awarded one hundred percent of the claimed economic damages, which include medical expenses for the treatment of pain. Second, the plaintiff argues that the facts and circumstances of this case demand an award of noneconomic damages. We do not agree.

1

As to the first part of the plaintiff's argument, we disagree that an award of all claimed economic damages, including compensation for medical expenses for the treatment of pain, *requires* an award of noneconomic damages.

"It is well established that in Connecticut a jury's decision to award economic damages does not trigger, as a matter of law, an automatic award of noneconomic damages. Our Supreme Court has articulated a special standard for the review of verdicts like the one at issue here to determine whether inconsistency renders them legally inadequate. . . . In *Wichers* v. *Hatch*, 252 Conn. 174, 188, 745 A.2d 789 (2000), [our Supreme Court] held

that trial courts, when confronted with jury verdicts awarding economic damages and zero noneconomic damages, must determine on a case-by-case basis whether a verdict is adequate as a matter of law. . . .

"Under *Wichers*, [r]ather than decide that an award of only economic damages is inadequate as a matter of law, the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do. . . .

"Thus, pursuant to *Wichers* and its progeny, [a] plaintiff [is] not entitled to an award of noneconomic damages simply because the jury awarded her economic damages. On the contrary, [a] plaintiff, as the party claiming noneconomic damages, had the burden of proving them with reasonable certainty. . . . Simply stated, [where] the plaintiff claim[s] noneconomic damages . . . she ha[s] the burden of proof to show that she experienced pain as the result of the accident." (Citations omitted; internal quotation marks omitted.) *DeEsso* v. *Litzie*, supra, 172 Conn. App. 804–805.

The plaintiff cites to *Wichers* v. *Hatch*, supra, 252 Conn. 174, and *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 789 A.2d 459 (2002), in support of her argument that the award is inadequate per se. She contends that these cases hold that where the jury awards *all* of the plaintiff's claimed economic damages, the jury has unambiguously determined that the claimed medical expenses were reasonable and necessary to treat pain caused by the claimed injury, and, thus, that an award of zero noneconomic damages invariably is inadequate.

This is not an accurate reading of these cases. Although our courts sometimes have been reluctant to do so,[10] our Supreme Court expressly has allowed for an award of 100 percent of the claimed economic damages and zero noneconomic damages under the right circumstances. See *Wichers* v. *Hatch*, supra, 252 Conn. 188–89 ("[T]he jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue."); *Schroeder* v. *Triangulum Assocs.*, supra, 259 Conn. 334 n.5 ("[o]ur conclusion on the facts of this case does not foreclose the possibility . . . that a jury in a case with different facts reasonably could award the full amount of a plaintiff's claimed economic dam-

ages but no noneconomic damages"); see also *Melendez* v. *Deleo*, 159 Conn. App. 414, 418–19, 123 A.3d 80 (2015) (affirming judgment awarding 100 percent of past claimed medical bills including for treatment of pain, wages, and property damage but zero noneconomic damages); *Lidman* v. *Nugent*, 59 Conn. App. 43, 46, 755 A.2d 378 (2000) (reversing and remanding with direction to reinstate jury verdict awarding all economic damages and zero noneconomic damages and render judgment thereon). Thus, contrary to the plaintiff's reading of our cases, they clearly stand for the proposition that *there is no per se rule* in cases where a jury awards substantial economic damages but no noneconomic damages.

Additionally, the fact that the jury awarded economic damages for medical treatment, including treatment for pain, does not *necessarily* mean that it must award damages for pain itself. Under the fact intensive, case-by-case inquiry demanded by *Wichers* v. *Hatch*, supra, 252 Conn. 188–90, it may be reasonable for a jury to conclude that although a plaintiff suffered an injury caused by a defendant and incurred reasonable and necessary medical expenses in treating that injury, that plaintiff nevertheless did not suffer compensable pain and suffering. See *Cusano* v. *Lajoie*, 178 Conn. App. 605, 611, 176 A.3d 1228 (2017) ("[T]he court seems to assume that because the plaintiff sought medical treatment for pain . . . *and was awarded the full amount of the cost of that treatment*, the plaintiff inevitably experienced compensable pain and suffering. Our Supreme Court expressly rejected that reasoning in *Wichers* v. *Hatch*, [supra, 188–90]." [Emphasis added.]); *Smith* v. *Lefebre*, 92 Conn. App. 417, 422, 885 A.2d 1232 (2005) ("there is no obligation for the jury to find that every injury causes pain").[11] Indeed, this court previously has upheld verdicts that awarded economic damages for procedures specifically targeting pain and suffering, but zero noneconomic damages. *Cusano* v. *Lajoie*, supra, 605 (chiropractic); *Melendez* v. *Deleo*, supra, 159 Conn. App. 414 (manipulation, stimulation, cold packs, chiropractic); *Silva* v. *Walgreen Co.*, 120 Conn. App. 544, 992 A.2d 1190 (2010) (emergency room observation and medication for anxiety, depression, and sleep disorders caused by alleged post-traumatic stress disorder); *Smith* v. *Lefebre*, supra, 92 Conn. App. 417 (physical therapy, ultrasound, traction, chiropractic); see also *Lidman* v. *Nugent*, supra, 59 Conn. App. 46 (upholding jury verdict awarding no noneconomic damages where trial court, in its decision, noted use of hot/cold packs, ultrasound, electrical stimulation, assisted therapeutic exercise, massage with deep friction, myofascial release and manual traction).

These cases indicate that it is possible for a jury to conclude that medical treatment was reasonable and necessary as a diagnostic or prophylactic measure, but that the plaintiff experienced either no pain or pain

caused by an underlying illness, preexisting condition or other cause. See, e.g., *Wichers* v. *Hatch*, supra, 252 Conn. 189–90 ("the jury could have accepted the evidence that it was advisable for the plaintiff to see his chiropractor more frequently than usual following the accident, but that the accident did not cause him actually to suffer greater pain *than he already had experienced as a result of his preexisting condition*" [emphasis added]); *Silva* v. *Walgreen Co.*, supra, 120 Conn. App. 559 ("[T]he jury, in its commonsense assessment of the case and evaluation of the plaintiff's credibility, might well have believed that she either sought medical treatment as an appropriate precautionary measure or in anticipation of possible litigation but that she failed to prove that she had actually suffered compensable pain. The jury was not required to find that, because the plaintiff sought treatment for pain and suffering, she necessarily experienced pain and suffering." [Internal quotation marks omitted.]).

2

Accordingly, we must examine with care the specific facts and circumstances of this case to determine whether the jury reasonably could have concluded that although the plaintiff's economic damages were compensable, her noneconomic damages were not. In light of this record, we cannot conclude that the jury's award was inadequate.

At trial, the plaintiff testified that, after the Friday collision, she experienced several symptoms: "Really bad headache. My neck felt really stiff. I had—couldn't bend my hand at all and I was all black and blued . . . ." For these, the plaintiff eventually sought treatment from various sources. First, over the weekend following the collision, she called her brother, a neurologist, who, over the telephone, ordered an MRI scan and prescribed Soma compound for the headaches. Then, on the Monday after the collision, the plaintiff consulted her primary care physician, who advised her to receive physical therapy for her neck. The plaintiff later sought advice regarding her hand from an orthopedist, who ordered X-ray imaging but did not prescribe any treatment.

The plaintiff testified that her neck injury was temporary and that she eventually stopped getting treatment therefor: "I went to physical therapy for a few months, but it was just sort of making it worse just massage or exercise. It didn't really do anything so it I discontinued that." Despite the lack of continued treatment, the plaintiff testified at trial that, at that time, her neck injury "isn't that bad. It's pretty much, much better. . . . Once in a while it'll, like, stiffen up but it's—it's not that bad." Conversely, the plaintiff testified that her headaches were persistent. She described them as "viselike," causing a "squeezing pressure pain type of feeling" in the "frontal" region of her head "[j]ust about on a daily

basis." She testified that she believed the headaches might be related to "abnormal findings" in her MRI, but agreed on cross-examination that such findings "could be" representative of "a normal variance" in someone her age. Although the MRI report the plaintiff received recommended that she undergo follow-up scans every four to six months, she admitted that she had never gotten a second scan; she testified that she intended to do so in the near future.

In addition to her recurring headaches, the plaintiff testified that the partial loss of mobility in her left hand was a permanent impairment, affecting her ability to type, crochet, garden, and bowl—activities she claimed she had enjoyed before the collision. She also testified, however, that during her initial consultation with the orthopedist, she was told that "there's really nothing that can be done" for her left pinky finger, and that her "finger should clear up." Despite a recommendation from the orthopedist to consult a hand specialist if her condition did not improve, the plaintiff conceded that she never did so.

Although the defendant's primary challenge to the plaintiff's claims was over the question of liability,[12] he also made an issue of the nature and severity of the plaintiff's injuries, and challenged the plaintiff to explain her failure to follow up on her doctors' recommendations and pursue further treatment. He also disputed her claims of inability to enjoy life's activities, and contested her assertion that the collision caused her claimed injuries. In response, the plaintiff conceded that she had repeatedly declined further diagnostic tests and other medical treatment, even when she had been advised to do so. She testified that some treatment, such as physical therapy, caused her more discomfort than nontreatment. She agreed that any abnormalities in her MRI scan could be related to individual physiology or age.

As discussed earlier in this opinion, claims of inadequate verdicts are treated on a case-by-case, fact specific basis. See *Wichers* v. *Hatch*, supra, 252 Conn. 188–90. Viewing the record in the light most favorable to sustaining the jury's verdict; see *DeEsso* v. *Litzie*, supra, 172 Conn. App. 805; we conclude that the facts of this case more closely align with those cases in which an award of substantially all the claimed economic damages and zero noneconomic damages was upheld. Here, the jury determined that all of the plaintiff's medical expenses were reasonable and necessary treatment for her relatively minor injuries.[13] Nevertheless, the jury reasonably could have concluded that the plaintiff did not experience any compensable pain related to the accident. First, a significant portion of the plaintiff's claimed medical expenses related to diagnostic consultations. In the jury's estimation, it may very well have been reasonable and necessary for the plaintiff to con-

sult her physicians after a motor vehicle collision to ensure that she had not suffered any injuries that may or may not present immediate or notable symptoms. This is especially true in light of the plaintiff's testimony that she had once before suffered a "really bad injury to [her] lower back" in a previous, unrelated motor vehicle collision involving a semitrailer truck. Similarly, the jury reasonably could have concluded that the radiological imaging the plaintiff received was an appropriate way to ensure that latent internal damage did not result from the collision.

Notwithstanding those expenses, the plaintiff received two additional treatments that ostensibly could be reasonable and necessary to treat pain caused by the accident: Soma, a muscle relaxant/analgesic compound, for her headaches and physical therapy for her neck. On this record, however, it was reasonable for the jury to conclude that the plaintiff failed to prove that the accident caused her compensable pain. With respect to the medication, the plaintiff testified that she believed that her headaches might be related to abnormalities found in her MRI, which she then conceded could have been caused not by the accident but rather by the idiosyncrasies of her physiology. Part of the reason that it is difficult to trace their source is that the plaintiff failed to follow up on her physicians' recommendation that she receive another MRI. The jury may reasonably have concluded that the plaintiff's failure to do so suggested that she was not concerned about the onset of new symptoms or possible damage to her brain. Accordingly, the jury reasonably could have determined that the plaintiff failed to prove by a preponderance of the evidence that the accident caused her headaches, and therefore, that although her diagnostic consultation and radiological imaging were reasonable and necessary in light of the collision, she did not experience compensable pain caused by it.

With respect to the physical therapy, the plaintiff testified that she stopped attending after a few months because "it was just sort of making it worse just massage or exercise. It didn't really do anything so . . . I discontinued that." The plaintiff also testified that despite the lack of treatment, the condition of her neck had improved. Together, this testimony could have led the jury reasonably to conclude that her physical therapy was a prophylactic treatment designed to prevent further damage to her cervical spine or the deterioration of her overall musculoskeletal condition. This is especially true in light of the fact that the plaintiff had previously injured her lower back, an injury for which Vicodin had been prescribed. Therefore, the jury reasonably could have determined that the plaintiff failed to prove by a preponderance of the evidence that the accident caused her neck pain.

To the extent that the plaintiff and the plaintiff's

witnesses, including her physicians, testified that the link between the collision and her pain was absolute, "[i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Cusano* v. *Lajoie*, supra, 178 Conn. App. 609.

Moreover, the trial court accepted the jury's verdict over the plaintiff's motion to set it aside or to order an additur. A court's acceptance of the verdict, despite objections, counsels in favor of its propriety. "Where . . . a trial court and a jury have concurred in their determination that a particular damages award is appropriate, that circumstance provides a persuasive argument for sustaining the action of the court on the motion. . . . The reason for such a deferential standard is clear. Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . " (Citations omitted; internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, 326 Conn. 540, 574-75, 165 A.3d 1167 (2017). "The trial court's refusal to set aside the verdict or to order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. . . . If, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict." (Citations omitted; internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 112–13, 663 A.2d 398 (1995).

We especially are reluctant to overturn an award premised mainly on subjective descriptions of pain and suffering.[14] In such cases, the credibility of the plaintiff and the plaintiff's witnesses is crucial, and we, as a reviewing court, are far less able to make such a determination upon a cold record. Instead, we defer to the jury, which was free to credit all, none, or some of the plaintiff's testimony and return a verdict accordingly. See *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 635. The record is clear that the nature and extent of the plaintiff's injuries, and the claimed damages flowing therefrom, were contested. We can presume that the jury returned a verdict reflective of its assessment of the results of that contest. In that respect, this case is similar to *Melendez* v. *Deleo*,

supra, 159 Conn. App. 414, in which this court affirmed the denial of an additur where the jury awarded all of the plaintiff's claimed economic damages and none of her claimed noneconomic damages.[15] The trial court in that case had the same opportunity as the jury to observe the witnesses, assess their credibility and determine the weight to be given their evidence.

Thus, the trial court's refusal to set aside the verdict or to order an additur must be given great weight and presumed correct unless unreasonable. Id. Here, as in *Melendez*, the plaintiff has failed to show that there was either a mistake in law or another valid basis for upsetting the will of the jury. Accordingly, we find no reason not to conclude that "the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation . . . or [that] the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *DeEsso* v. *Litzie*, supra, 172 Conn. App. 796. Therefore, it was not an abuse of discretion for the court to accept the verdict.

## II

The plaintiff next claims that a series of procedural irregularities required the court to set aside the verdict and order a new trial. Specifically, the plaintiff argues that the court (1) failed to accept a technically correct verdict in violation of Practice Book § 16-31,[16] (2) neither consulted with counsel before communicating with the jury nor tailored such communications to the scope of the jury's question in violation of Practice Book § 16-28,[17] (3) deprived the plaintiff of the opportunity to ensure that only full exhibits were submitted to the jury, and (4) discharged the jury without affording the parties the opportunity to have the jury polled in violation of Practice Book § 16-32.[18] Because we are not persuaded that the court abused its discretion in any of the ways alleged, we disagree that the court should have set aside the verdict and ordered a new trial.

The following additional facts underlie the plaintiff's claims of procedural impropriety. Evidence concluded on November 4, 2015. On the following day, in the morning, the parties made their closing arguments and the court delivered its final instructions to the jury. At the conclusion of those instructions, the court indicated that, due to a personal commitment, deliberations would have to pause on that day at 4 p.m. rather than at 5 p.m. That prompted counsel for the plaintiff to ask whether any other judge might be available to hear a potential verdict after 4 p.m.; the court indicated that every judge in that courthouse was on trial.

The court then released the jury for the lunch recess and gave both counsel an opportunity to sort through the exhibits that would be submitted to the jury.[19] After

the lunch recess, the jury began deliberations. At approximately 3:45 p.m., it sent out a note with a question for the court. The court informed counsel that it would take the question at that time and release the jury until the following morning.[20] The court then received the jury's note and read it into the record. The note read: "We have come to a verdict and are pretty sure we haven't filled form Plaintiff's Verdict & Interrogatories as to count two correctly."

In response to the jury's note, the court stated: "That's not really a question but I'm going to have it marked as a court exhibit. And because, as I said, I have to recess early today, I'm going to mark that as a court's exhibit, and I'm going to release you for today, ask that you report back at 9:30 tomorrow morning, and at 9:30 tomorrow morning you can resume your deliberations. If any further follow up questions are necessary, we'll do so at that time, but I don't want anything to be stampeded this afternoon."

Counsel for the plaintiff then asked if the jury could be held while he addressed a question to the court. The court complied, and the jury left the courtroom. At that point, counsel for the plaintiff made a record of his request to have another judge take the verdict.[21] The court declined so to order and released the jury for the day.

The next morning, the court informed counsel that it intended to (1) reinstruct the jury on the proper way to complete the verdict forms and (2) send fresh copies of each such form to the jury when it reconvened for deliberations. Counsel for the plaintiff then sought to clarify whether the jury would have the original copy of each form and whether the court would mark the original copies as exhibits. The court indicated that the jury would have both copies of the verdict forms, and that it eventually would mark whatever forms the jury had partially or incorrectly completed as court's exhibits.

Thereafter, the following exchange occurred:

"[The Plaintiff's Counsel]: And will the court determine prior to the documents going back into the jury room whether or not the verdict forms have been signed?

"The Court: No.

"[The Plaintiff's Counsel]: Then I would ask the court to do that.

"The Court: I won't.

"[The Plaintiff's Counsel]: And, Your Honor, the reason I would ask the court to do that is because this jury went home last night, and if that verdict form was signed, then sending them back in gives them a chance to have outside influences or different deliberations. If I had a verdict yesterday, I need to protect that verdict,

and I'm asking—

"The Court: I am assuming . . . that the jury followed the court's instructions, which were not to discuss the matter with anyone or to allow anyone to discuss the matter with them. They were told that, they were specifically told when they left yesterday at approximately four o'clock that they would only deliberate in the—when all of them were together and they had with them the full exhibits and the verdict forms which were given to them by the clerk. I presume that they followed that instruction. So I am not going to ask them if they talked with anybody or if they signed a verdict form. I don't know what's on those verdict forms, if anything.

"[The Plaintiff's Counsel]: Your Honor, again, I would ask that you determine whether or not the verdict form has been signed. I understand—

"The Court: I'm not going to do that.

"[The Plaintiff's Counsel]: I understand the court's direction."

After a brief recess, counsel for the plaintiff raised the issue again, but the court did not change its mind.[22] Thereafter, the court reinstructed the jury on the methods for completing the verdict forms. When the jury returned to deliberate, counsel for the plaintiff took an exception on the record to the court's actions with respect to the jury's note.

Shortly thereafter, the jury indicated that it had reached a verdict. When the jury returned to the courtroom, the court marked all of the verdict forms as court's exhibits. The clerk then read the verdict into the record, and the jury confirmed it. The court then ordered that the verdict be "accepted and recorded," and thanked the jury before asking the jurors to return to the jury room. The court then addressed the verdict forms it had marked as court's exhibits.

At that point, the court asked counsel whether they wanted to be heard. *Counsel for the plaintiff stated that she did not.* Counsel for the *defendant*, however, requested that the court poll the jury. The court declined, stating that it had discharged the jury. Counsel for the plaintiff took no position with respect to that request.[23]

The plaintiff's four claims of procedural irregularity merit little discussion. It has long been the rule that "control of the order of the courtroom is necessarily within the discretion of the trial court . . . ." *Antel* v. *Poli*, 100 Conn. 64, 69, 123 A. 272 (1923). "The trial court is vested with a large discretion over matters occurring in the conduct of the trial. While this is a judicial discretion and therefore subject to some degree of review and control, its exercise will not be interfered with unless it has been clearly abused to the manifest

injury of a litigant." *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 322, 430 A.2d 1 (1980). This inherent power to control proceedings exists independent of any set forth by rule or statute. See *State* v. *Abushaqra*, 164 Conn. App. 256, 264–66, 137 A.3d 861 (2016). "The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . In addition, matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court." (Internal quotation marks omitted.) *Bobbin* v. *Sail the Sounds, LLC*, 153 Conn. App. 716, 724–25, 107 A.3d 414 (2014), cert denied, 315 Conn. 918, 107 A.3d 961 (2015). "In determining whether a trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." Id., 727.

As for the plaintiff's claim that the court failed to comply with Practice Book § 16-31, we disagree. The note that the jury sent out to the court at 3:45 p.m. indicated that the jury was "pretty sure we haven't filled form Plaintiff's Verdict & Interrogatories as to count two correctly." In response, the court marked the note as a court exhibit and reminded counsel and the jury that it needed to recess at 4 p.m. that day before instructing the jury to report back the next morning. The next morning, the court reinstructed the jury on the proper way to complete verdict forms and sent it fresh copies of the verdict forms along with the original forms. By following this procedure, the court provided the jury with reinstruction and time to complete the forms properly. Because the note indicated that the jurors were "pretty sure" they had not done everything necessary to render a technically correct verdict, the court properly adjourned for the day to give them more time, after they were reinstructed, to properly complete the verdict forms. Further, there is nothing in the record, or in any legal authority provided by the plaintiff, to indicate that she was harmed or prejudiced by the court's action.[24]

As for the plaintiff's claim that the court failed to consult with counsel before reinstructing the jury, the record indicates otherwise. The court explained to counsel what it planned to do, listened to counsel and then reinstructed the jury as to filling out the verdict forms.

The next claim of procedural irregularity, that the court failed to ensure that only full exhibits were submitted to the jury, is particularly meritless. The record reveals that prior to the beginning of deliberations, the court gave counsel the opportunity to review the materials the jury would have with it during deliberations. Although the plaintiff claims that the court improperly

deprived counsel of the opportunity to review the materials prior to deliberations on the second day, she offers no legal authority for that proposition. See *Matthiessen* v. *Vanech*, 266 Conn. 822, 844–47, 836 A.2d 394 (2003) (no harm where court improperly permitted jury to begin deliberations before counsel reviewed exhibits). Finally, unlike the plaintiff in *Kortner* v. *Martise*, 312 Conn. 1, 91 A.3d 412 (2014), on which she relies, the plaintiff here has provided no showing of harm as a result of the alleged impropriety. See id., 45–46 (release to jury of exhibit not in evidence was harmful where it directly related to central issue in case).

Finally, the plaintiff claims that the court improperly discharged the jury before the parties had an opportunity to request a polling of the jury under Practice Book § 16-32. That rule, however, does not require the court to inquire, sua sponte, whether the parties want to have the jury polled. The plaintiff reads *Wiseman* v. *Armstrong*, 295 Conn. 94, 989 A.2d 1027 (2010), to hold that the court must do so. Our reading of *Wiseman* differs markedly. See id., 104 ("the plain language of § 16-32 imposes a mandatory obligation on the trial court to poll the jury *when requested*" [emphasis added]). Here, there was no request, prior to the discharge of the jury, that the jury be polled.[25]

Accordingly, we conclude that the trial court did not abuse its discretion in refusing to set aside the verdict due to procedural irregularities.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the plaintiff failed to include the operative complaint in part I of her appendix. See Practice Book § 67-8.

[2] Specifically, the court stated: "The court does not sit as the seventh juror and must find [in] order to set aside a verdict that the verdict was the result of prejudice, partiality, corruption or mistake, none of which were present here. The jury deliberated, discharged its duties and responsibilities conscientiously and was discharged—was discharged before defense counsel made the request for a poll of the jury, and having been discharged, did not feel that resummoning them to the courtroom would be appropriate at that time for a—a poll of the—the jury. And that was particularly true given the claims that were being advanced regarding the alleged improprieties and the taking of the—the verdict, and that was appropriately minimized, I think.

"So the—the motion for—to set aside the verdict is denied. The motion for additur is denied. The question is not whether the court would or would not have awarded noneconomic damages, but whether construing all facts most favorably to affirming a verdict the jury could award, no damages of a noneconomic nature, which they did in this case. So the motion is denied in its entirety."

[3] Practice Book §16-18 provides: "The judicial authority may submit to the jury written interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. The clerk will take the verdict and then the answers to the several interrogatories, and thereafter the clerk will take the judicial authority's acceptance of the verdict returned and the questions as answered, and proceed according to the usual practice. The judicial authority will not accept a verdict until the interrogatories which are essential to the verdict have been answered."

[4] General Statutes § 14-218a provides in relevant part: "(a) No person shall operate a motor vehicle upon any public highway . . . or road . . . or on any parking area . . . or upon a private road on which a speed limit has

been established . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of highway, road or parking area, the intersection of streets and weather conditions. . . . Any speed in excess of such limits, other than speeding . . . shall be prima facie evidence that such speed is not reasonable . . . ."

[5] General Statutes § 14-222 provides in relevant part: "(a) No person shall operate any motor vehicle upon any public highway . . . or any road . . . or in any parking area for ten cars or more or upon any private road on which a speed limit has been established in accordance . . . or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway, road or parking area . . . at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle . . . shall constitute a violation of the provisions of this section."

[6] General Statutes § 14-295 provides in relevant part: "In any civil action to recover damages resulting from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has specifically pleaded that another party has . . . with reckless disregard operated a motor vehicle in violation of section 14-218a, . . . 14-222 . . . and that such violation was a substantial factor in causing such injury . . . ."

[7] The other interrogatories read: "1. Do you find that [the defendant] violated either or both of the following statutes? . . . [General Statutes §] 14-218a . . . [General Statutes §] 14-222 . . . 2. Do you find that [the defendant] violated either or both statutes 'with reckless disregard.'? . . . 4. Do you find that the Plaintiff should receive Double Damages, Treble Damages, or Neither?" The jury also completed verdict forms that inquired as to (1) the plaintiff's comparative negligence and (2) specific economic damages.

[8] Both the verdict form and the court's instructions define noneconomic damages as "physical pain and suffering, mental and emotional pain and suffering, permanent injury, disability or impairment, and the inability to enjoy and to fully participate in the daily activities of life." The plaintiff argues that "injuries" means one or more of these things.

We note that, in some similar cases, this issue has been presented to the jury in an additional interrogatory. See, e.g., *Sigular* v. *Gilson*, supra, 141 Conn. App. 585–86 ("The first question asked whether the negligence of the decedent proximately caused the plaintiff's injuries . . . . Question two then asked *whether the plaintiff suffered damages as a result of the decedent's negligence* . . . . Question three asked the jury to determine the amount of damages suffered by the plaintiff, by specifically listing the relevant economic and noneconomic damages." [Emphasis added.]).

Additionally, the plaintiff's interpretation of the interrogatory at issue begs the question of which of the underlying injuries, if any, the jury found proven. In *Esaw* v. *Friedman*, 217 Conn. 553, 567, 586 A.2d 1164 (1991), the plaintiff challenged as inadequate a verdict in her favor and relied on an interrogatory remarkably similar to the interrogatory here for support: "Did the plaintiff prove that one or more of the proven specifications of negligence was a proximate cause of (that is, a substantial factor in causing) her injuries?" The jury in that case also answered in the affirmative, but did not compensate the plaintiff to her satisfaction. The court in that case noted that "the jury did not specifically find what claimed injuries were proven to have been caused by the defendant's negligence. This response of the jury is not inconsistent with a finding that only some of the injuries that the plaintiff claimed were in fact caused by the . . . accident. In short, we cannot conclude on this record that the verdict was so inadequate that it shocks the sense of justice and compels the conclusion that it was the product of partiality, prejudice, mistake or corruption." Id.

[9] We also note that, despite the plaintiff's reliance on the diction of the interrogatory form, the court repeatedly spoke of noneconomic damages more broadly, referring to "injuries and damages," "injuries and losses," and "nonmoney losses".

[10] See, e.g., *DeEsso* v. *Litzie*, supra, 172 Conn. App. 808–809 (distinguishing facts from cases where jury awarded all or "virtually all" claimed economic damages).

[11] But see *Benedetto* v. *Zaku*, 112 Conn. App. 467, 472, 963 A.2d 94 (2009) ("[i]t is not reasonable for a jury to find a defendant liable for the expense of a spinal fusion surgery, but not liable for the pain and permanent disability necessarily attendant to such intrusive surgery"); *Lombardi* v. *Cobb*, 99 Conn. App. 705, 709, 915 A.2d 911 (2007) ("[b]ecause the plaintiff's medical

expenses and lost wages related to her treatment [and medication] for back and shoulder pain, the jury necessarily found that she had experienced pain, and it therefore should have awarded her noneconomic damages"); *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 489, 886 A.2d 461 (2005) ("We conclude that under the circumstances, the jury's award of economic damages and no noneconomic damages is internally inconsistent and ought to have been set aside. In finding that the plaintiff, by virtue of the accident, had suffered . . . [a pinched nerve, a herniated disc, and other trauma] requiring [physical therapy] treatments and medication, the purpose of which was to alleviate pain and to improve functioning, the jury necessarily found that he had experienced pain and decreased functioning."), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); *Elliot* v. *Larson*, 81 Conn. App. 468, 477, 840 A.2d 59 (2004) (court did not abuse its discretion in concluding that plaintiff "must have suffered pain accompanying his injury" where jury awarded all economic damages including lost wages [internal quotation marks omitted]); see also *Schroeder* v. *Triangulum Assocs.*, supra, 259 Conn. 333 ("[t]he jury reasonably could not have initially found the defendant liable for the expense of the surgery but not responsible for any pain or disability attendant to such surgery"). The facts of these cases, i.e., involving surgery, lost wages, an objective diagnosis, etc. make them arguably distinguishable from the present case, where the injuries claimed are based on subjective complaints and there is no claim for lost wages, and other cases where this court has upheld the jury award of no noneconomic damages.

[12] The defendant's counsel did not disagree with the propriety of the plaintiff's initial diagnostic consultations, even going so far as to credit the assessment of the parties' expert that the plaintiff's treatment was "appropriate."

[13] With respect to awarding economic damages, the court instructed the jury as follows: "To the extent that these charges are *reasonable, and were necessary and were proximately caused by the accident* . . . you may compensate her for these charges. There is a presumption that the medical bills are reasonable if no contrary evidence has been offered to rebut the reasonableness of the bills and costs." (Emphasis added.)

[14] The parties' expert characterized her complaints as "subjective."

[15] The facts of *Melendez* are somewhat analogous and bear reciting here. In that case, at the scene of the automobile accident, the plaintiff complained of "left side lower back pain 8 out of 10" and was transported by ambulance to Saint Mary's Hospital in Waterbury. There, the emergency department physician found nothing remarkable and the plaintiff refused pain medication. She testified, however, that shortly after she was discharged, she vomited twice and developed headaches and wrist pains. *Melendez* v. *Deleo*, 159 Conn. App. 419–20.

Accordingly, she visited the emergency room at Waterbury Hospital. (She testified that she did not return to Saint Mary's Hospital because "she did not feel like [the personnel at Saint Mary's Hospital] even bothered to really check me when I was there the first time.") At Waterbury Hospital, the plaintiff complained of left hip pain, left wrist pain, left shoulder pain, left leg pain and a headache. She received X-rays and CT scans, all of which returned normal. She was prescribed medication for nausea and was discharged. Id., 420.

Five days later, she went to her primary care provider complaining of, inter alia, pain in her hip, back, neck and shoulder. Her physician noted no signs of problems but advised the plaintiff to return if her pain did not improve. Id.

Six days after that, the plaintiff instead began chiropractic treatment for the pain in her back, hip, and leg. Her chiropractor concluded that she suffered a 6 percent permanent impairment of her lumbar spine and recommended treatment to include cervical manipulation, electrical muscle stimulation and cold packs. At trial, the plaintiff testified that, although her conditions had not improved, she had not sought further help from any medical professional after she concluded her chiropractic treatment. Id., 421–22.

The jury awarded the plaintiff all of her claimed medical bills, lost wages and automobile property damages, but no noneconomic damages. This court affirmed the trial court's denial of the plaintiff's motion to set aside the verdict and for additur, concluding that the jury was not required to believe the plaintiff or her expert. Id., 416–17.

In the present case, the plaintiff did not complain of pain at the scene of the accident, was not transported to the hospital in an ambulance, did not

visit an emergency department, failed to follow up on her treatment, had normal or otherwise explainable test results and testified that her condition had improved.

[16] Practice Book § 16-31 provides: "Subject to the provisions of Section 16-17, the judicial authority shall, if the verdict is in order and is technically correct, accept it without comment."

Practice Book § 16-17 provides: "The judicial authority may, if it determines that the jury has mistaken the evidence in the cause and has brought in a verdict contrary to it, or has brought in a verdict contrary to the direction of the judicial authority in a matter of law, return the jury to a second consideration, and for like reason may return it to a third consideration, and no more. (See General Statutes § 52-223 and annotations.)"

General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

[17] Practice Book § 16-28 provides: "If the jury, after retiring for deliberations, requests additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions."

[18] Practice Book § 16-32 provides: "Subject to the provisions of Section 16-17, after a verdict has been returned and before the jury has been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or it may be discharged."

[19] "The Court: . . . [W]e'll stay on the record. We'll get all the exhibits ready and counsel can look at them to see if they're in the form to be given to them.

* * *

"Here are the original interrogatories. And let's separate the ID and the regular exhibits and just take a look at them for a second. . . . Just take a look at them, make sure they're all in proper form, don't need redaction. Send them in as soon as the jury comes back at two o'clock."

[20] "The Court: Let's ask them to come in with the question, I'll answer the question and then we'll recess until tomorrow morning because we're going to have to suspend at this point."

[21] "[The Plaintiff's Counsel]: May I—may I put it on the record, Your Honor?

"The Court: Yes, you may put on the record. I—I told everyone today that I had because of a personal matter, I had to recess at four o'clock today. That's what I am doing. We had—the jury has done that. I don't want to rush through anything, and I'll have them come back tomorrow. We have the verdict form, the question to—from the jury marked, it's a written communication. The clerk will take the materials into custody and they'll get them again at 9:30 tomorrow morning when they resume.

"[The Plaintiff's Counsel]: And if, Your Honor, if I may just make a record. My request was gonna be if the court could in its consideration find another Judge—

"The Court: No.

"[The Plaintiff's Counsel]: —you may—

"The Court: Summon the jury. Told you that this morning."

[22] "[The Plaintiff's Counsel]: Your Honor, before we summon the jury—

"The Court: Certainly just a moment.

"[The Plaintiff's Counsel]: May—may I go on the record?

"The Court: Certainly.

"[The Plaintiff's Counsel]: Your Honor, the document the court exhibit states that this jury has a verdict.

"The Court: Right.

"[The Plaintiff's Counsel]: And under Practice Book § 16-31 it is the duty of this court to accept that verdict and examine that verdict, and if that verdict is in error under [Practice Book §] 16-17, then you can send the jury back. You cannot under [§] 16-31 proceed as you—

"The Court: We have—

"[The Plaintiff's Counsel]: —are indicating—

"The Court: We have a note from the jury that says, we have come to a verdict and are pretty sure we haven't filled a form plaintiff and verdict and interrogatories as to count two correctly. Well, I'm—I am going to reinstruct them. I don't know that it says they have completed the form but I am going to reconstruct them—reinstruct them, rather, on the completion of the forms. After they have completed the forms, I am going to, as I indicated earlier, give them additional verdict forms and indicate that if they have completed any portion of the form, they can either complete the entire form or they can use another form if that is appropriate, and they will bring back all of the forms. Following the receipt of the verdict, and again I don't know if they've completed anything. I don't know if they've done anything. Following the completion of the verdict, those forms which are not used will be marked as court's exhibits and any motions can be direct to those forms. Summon the jury.

[23] "The Court: Counsel wish to be heard?

"[The Plaintiff's Counsel]: Nothing, Your Honor.

"[The Defendant's Counsel]: Your Honor, I would just request, given everything that we've gone through, that we poll the jury.

"The Court: Well, I think that should have been done before I released them to the – to the jury room. The verdict was accepted and recorded. I can't poll them subsequent to accepting a particular jury, I don't believe.

"[The Defendant's Counsel]: Pursuant to [Practice Book] § 16-32, poll after the jury verdict subject to the provisions of [Practice Book] § 16-17 after verdict has been returned and before the jury has been discharged, the jury—the jury shall be—

"The Court: I—

"[The Defendant's Counsel]: —polled—

"The Court: —think I just—

"[The Defendant's Counsel]: Shall be polled.

"The Court: I just told them I wanted to talk to them and that they were being discharged with the thanks of the court, so I don't think I can poll them at this particular point. I think that—that's premature. That issue should have been raised while the jury was still in the courtroom. They have since retired to the jury room having been excused and certainly they could have been talking about this as I told them they could. So I think a poll at this point would be inappropriate. [The plaintiff's counsel]?

"[The Plaintiff's Counsel]: Your Honor, I take no position.

"The Court: All right, all right. Then we will—we will stand in—in recess."

[24] Indeed, the original verdict forms indicate a *less* favorable verdict for the plaintiff, in that they assign her a higher proportion of liability than the final verdict.

[25] The *Wiseman* court also held that the error in refusing to poll the jury when requested prior to discharge must be harmful to warrant reversal. *Wiseman* v. *Armstrong*, supra, 295 Conn. 115–21.

———————————————